**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMES J. McDONOUGH,** | : | |
| Plaintiff | : | |
| v. | : | **CIVIL ACTION NO. 4:CV-07-613** |
| **MICHAEL J. ASTRUE,** | : | **(McCLURE, D.J.)** |
| Commissioner of | | **(MANNION, M.J.)** |
| Social Security | : | |
| Defendant | : | |

## REPORT AND RECOMMENDATION

The record in this action has been reviewed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to determine whether there is substantial evidence to support the Commissioner's decision denying the plaintiff's claim for Disability Insurance Benefits, ("DIB"), under Title II of the Social Security Act, ("Act"). 42 U.S.C. §§ 401-433.

## I.   PROCEDURAL HISTORY.

The plaintiff protectively filed an application for DIB on October 17, 2003, alleging disability since September 15, 1997, due to back pain. (TR. 57-60). The state agency denied his claim initially and he filed a timely request for a hearing. (TR. 41-44, 45-46). A hearing was held before an Administrative Law Judge, ("ALJ"), on July 20, 2006. (TR. 467-94). At the hearing, the plaintiff, represented by counsel, and a vocational expert, ("VE"), testified. (TR. 467-94). The plaintiff was denied benefits pursuant to the ALJ's decision of August 23, 2006. (TR. 13-23).

The plaintiff requested review of the ALJ's decision. (TR. 11-12). The Appeals Council denied his request on January 26, 2007, thereby making the ALJ's decision the final decision of the Commissioner. (TR. 4-7). 42 U.S.C. § 405(g).

In compliance with the Procedural Order issued in this matter, the parties have filed briefs in support of their respective positions. (Docs. 7, 8 and 9).

## II.   STANDARD OF REVIEW.

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999). It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy"

>means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

### III.    DISABILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520 (2004). *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. *See* 20 C.F.R. § 404.1520.

The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. § 404.1520.

In the instant matter, the ALJ proceeded through each step of the sequential evaluation process and concluded that the plaintiff was not disabled within the meaning of the Act. (TR. 15-28). At step one, the ALJ found that the plaintiff has not engaged in substantial gainful work activity from his alleged disability onset date, September 15, 1997, through his date last insured, December 31, 2001, ("DLI"). (TR. 17). At step two, the ALJ concluded that, through the plaintiff's DLI, his impairments of degenerative disc disease of the lumbar spine and osteoarthritic changes in the lumbar spine were "severe" within the meaning of the Regulations. (TR. 17). At step three, the ALJ found that, through the DLI, the plaintiff's severe impairments

were not severe enough, either singly or in combination, to meet or medically equal the criteria for establishing disability under the listed impairments as set forth in Appendix 1, Subpart P, Regulations No. 4. (TR. 17-18).

At step four, the ALJ found that, through the DLI, the plaintiff was unable to perform any of his past relevant work. (TR. 26). The ALJ found at step five that, through the DLI, the plaintiff had the residual functional capacity, ("RFC"), to perform a narrow range of light work.[1] (TR. 18-26). The ALJ then determined that, through the DLI, there were a significant number of jobs in the national economy that the plaintiff could have performed. (TR. 27). Thus, the ALJ concluded that the plaintiff had not been under a disability, as defined in the Act, from his alleged onset date through his DLI. (TR. 27-28). *See* 20 C.F.R. § 404.1520(g).

The relevant time period for this case is September 15, 1997, the alleged disability onset date, through December 31, 2001, the date last insured.

## IV.   BACKGROUND.

The plaintiff was born on February 16, 1964 and was thirty-seven (37) years old on the date last insured. (TR. 26, 475). Therefore, he is considered a "younger person" under the Regulations. 20 C.F.R. §§ 404.1563(c), 416.963(c). The plaintiff obtained a Graduate Equivalency Diploma, ("GED"), and received no further training. (TR. 476). He was a sergeant in the Army

---

[1] Specifically, the ALJ found that the plaintiff had the RFC to lift and carry 20 pounds occasionally and 10 pounds frequently, stand/walk 2 hours and sit 6 hours in an 8-hour workday with a sit/stand option, occasionally climb, balance and stoop, never kneel, crouch, crawl or use ladders, never be around vibrations, hazards, moving machinery or unprotected heights, and was limited to simple, routine tasks. (TR. 18).

and was honorably discharged in 1994. (TR. 476). The plaintiff has past relevant work as a soldier and a painter. (TR. 489-90).

The plaintiff testified that, during the relevant time period, he took care of his own personal needs, did occasional cooking and minimal household chores. (TR. 479). His hobbies included fishing, hunting, hiking, walking, crafts, drinking alcohol and reading. (TR. 479-80).

The plaintiff took Methadone, Ibuprofen and Tylenol to treat his symptoms. (TR. 482-83). He also used topical ointments, a heating pad, and underwent nerve blocks and physical therapy. (TR. 483-84). The plaintiff stated that the medications were not very effective in controlling his pain, which lead to his alcohol consumption. (TR. 483). The Methadone caused tremors, shortness of breath and loss of memory. (TR. 483).

The plaintiff described his lower back pain as a sharp, stabbing pain that radiated into his legs, one at a time. (TR. 484). Prolonged standing or sitting caused numbness and tingling in his feet. (TR. 484). The plaintiff laid down ten to fifteen times per day for twenty to thirty minutes at a time to help alleviate his pain. (TR. 487-88).

The plaintiff stopped drinking alcohol in June 2001. (TR. 485). When he stopped drinking, he could not walk as long or lift as much as he had been able to in the past. (TR. 487).

Vocational expert, Ronald Sholtis, testified based on the *Dictionary of Occupational Titles*. (TR. 488-93). In response to the ALJ's hypothetical questions, the VE testified that an individual, such as the plaintiff, would be capable of performing work as a hand packager, inserter, visual inspector, security clerk and bench worker. (TR. 490-93). The VE also stated that a hypothetical individual, such as the plaintiff, would not be able to perform any work in the national economy if he required more than two breaks per day, plus lunch, and would require breaks to lay down and would have more than

5

three absences per month. (TR. 492-93).

## V. DISCUSSION.

### *A. Whether the ALJ erred by rejecting the opinions of the plaintiff's treating physician and the other physicians of record.*

The plaintiff states that the ALJ erred by rejecting Dr. Carleton's opinion in his September 20, 2005 Medical Source Statement. (Doc. 7 at 5-7) (TR. 269-73). The plaintiff also states that the ALJ erred by rejecting the opinions of Dr. Nedurian, Dr. Aneja and the Veterans Administration, ("VA"), physicians. (Doc. 7 at 7-8). The defendant states that substantial evidence supports the ALJ's evaluation of the medical opinions. (Doc. 8 at 4-11). Moreover, Drs. Carleton, Nedurian and Aneja never treated plaintiff during the relevant time period. (Doc. 8 at 4).

An ALJ must accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer*, 186 F.3d at 429 (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)); *see also Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir.1994); *Jones v. Sullivan*, 954 F.2d 125, 128 (3d Cir. 1991); *Allen v. Bowen*, 881 F.2d 37, 40-41 (3d Cir.1989); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986). When the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Plummer*, 186 F.3d at 429 (citing *Mason*, 994 F.2d at 1066). The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. *See Adorno*, 40 F.3d at 48. In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical

6

reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. *Plummer*, 186 F.3d at 429; *Frankenfield*, 861 F.2d at 408; *Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir. 1983).

The plaintiff states that he began treating with John F. Carleton, Jr., M.D., in 1998. (Doc. 7 at 5). However, the record reveals that the plaintiff did not treat with Dr. Carleton until 2002. (TR. 73). On September 20, 2005, Dr. Carleton completed a Lumbar Spine Medical Source Statement of the plaintiff's Functional Abilities and Limitations regarding his condition prior to December 2001. (TR. 269-73). Dr. Carleton diagnosed spinal stenosis with neuropathy. (TR. 269). He opined that the plaintiff could sit and stand for thirty minutes at a time and sit and stand/walk less then two hours during an eight-hour workday. (TR. 271). The plaintiff would require breaks to walk every ten minutes for ten minutes at a time and would require a sit/stand option. (TR. 272). He opined that the plaintiff would require several unscheduled breaks during the day for several minutes at a time. (TR. 272). Dr. Carleton found that the plaintiff could occasionally lift up to ten pounds and never lift twenty to fifty pounds. (TR. 272). He found that the plaintiff could never bend or twist and his impairments would cause him to miss work more than three times per month. (TR. 273).

On September 20, 2005, Dr. Carleton also completed a Clinical Assessment of the plaintiff's pain. (TR. 274). He opined that the plaintiff's pain would impair his ability to adequately perform daily activities or work. He also found that physical activity (such as walking, standing and bending) greatly increases the plaintiff's pain causing abandonment of tasks related to daily activities or work, and that medication will severely limit the plaintiff's effectiveness in the workplace. (TR. 274).

7

The ALJ rejected the opinion of Dr. Carleton, finding that the objective evidence of record does not support Dr. Carleton's opinion. (TR. 22-25). The ALJ stated that Dr. Carleton completed the Medical Source Statement in view of the plaintiff's current diagnoses and condition, when the plaintiff's DLI was December 2001. (TR. 22-24). The ALJ stated that the objective evidence reveals that the plaintiff's condition during the relevant time period remained "relatively stable." (TR. 24). The ALJ noted that the plaintiff suffered from degenerative disc disease and disc bulges, with no evidence of herniation, stenosis or nerve root or cord impingement. (TR, 24).

Further, the ALJ noted that examinations reveal that the plaintiff had full range of motion, normal gait (except on one examination), and intact and normal strength, sensory, reflexes and neurological. (TR. 24, 394, 433-36). The plaintiff consistently had tenderness over the lumbar spine, intermittent spasm in the lumbar spine and he had consistent complaints of pain. (TR. 23, 167-68, 394, 433-36). There is no evidence that the plaintiff required an assistive device, that he had an inability to ambulate or had a severe reduction in range of motion of his back and he never required surgery.

Gregory Nedurian, M.D., performed a consultative examination on March 1, 2004, 2½ years after the DLI expired. (TR. 205-211). Dr. Nedurian noted that the plaintiff sustained a significant injury in 1982 and as a result, suffers from osteoarthritis and degenerative disc disease in the thoracic and lumbar region. (TR. 207). Upon examination, Dr. Nedurian noted that the plaintiff had excellent grip strength, his lower extremities showed no atrophy and very strong musculature with good straight leg raising and some low back discomfort. (TR. 207). The plaintiff's gait was "fairly good," he had sustained intolerance with discomfort in ambulating, bending, sitting or standing. He moved from a sitting and squatting position protective of his lower back and his vascular status was fully intact. (TR. 207).

In February 2004, Dr. Nedurian completed a Medical Source Statement of the plaintiff's Ability to Perform Work-Related Physical Activities. (TR. 208-211). He found that the plaintiff could occasionally lift and carry up to ten pounds, stand and walk approximately four hours in an eight-hour workday, sit approximately three to four hours in an eight-hour workday, and push and pull unlimitedly. (TR. 208). Dr. Nedurian found that the plaintiff could occasionally bend, kneel, stoop, crouch, balance and climb. The plaintiff was limited in reaching, handling and feeling and he should avoid cold temperature extremes. (TR. 209).

The plaintiff argues that the ALJ erred by not accepting Dr. Nedurian's assessment that the plaintiff could lift no more than ten pounds. (Doc. 7 at 7). The defendant counters that Dr. Nedurian's assessment does not relate to the relevant time period and that Dr. Nedurian's own clinical findings do not support his restrictive lifting requirement. (Doc. 8 at 8).

The ALJ rejected Dr. Nedurian's opinion. (TR. 25). The ALJ found that Dr. Nedurian's examination findings were based on the plaintiff's subjective complaints and not on the objective findings of record. (TR. 25). The ALJ found that the plaintiff's subjective complaints are not consistent with the objective evidence. Thus, the ALJ rejected Dr. Nedurian's opinion. (TR. 25).

Rita Aneja, M.D., a state agency physician, completed a Physical RFC Assessment on March 3, 2004. (TR. 212-19). Dr. Aneja found that the plaintiff could occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, stand, walk and sit for six hours during an eight-hour workday, and push and pull unlimitedly. (TR. 213). The plaintiff could occasionally climb and balance, and frequently stoop, kneel, crouch and crawl. (TR. 214).

The ALJ rejected, in part, Dr. Aneja's opinion. (TR. 25). The ALJ noted that Dr. Aneja did not have all the evidence of record available to her when

9

rendering her decision. Specifically, Dr. Aneja did not have evidence from the VA covering the time period prior to 2001. (TR. 25).

On October 13, 1998, the VA determined that the plaintiff was entitled to individual unemployability due to service-connected disabilities effective March 3, 1998. (TR. 407). We note that the issue of disability determination is reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(e)(1)-(3), 416.927(e)(1)-(3). The ALJ nevertheless evaluated the VA finding of unemployability. (TR. 24). Under 20 C.F.R. § 404.1504, findings from other agencies, such as the VA, are not binding on the SSA. 20 C.F.R. § 404.1504 provides as follows:

> A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

20 C.F.R. § 404.1504. The ALJ considered and rejected the VA determination. The ALJ evaluated all the evidence of record and did not err in her evaluations.

The ALJ ultimately determined that the plaintiff retained the RFC for a narrow range of light duty work. The ALJ accommodated the plaintiff's back pain when rendering her RFC determination, noting that evidence reveals that the plaintiff would have been able lift and carry at the light level. (TR. 25-26). The plaintiff testified that, during the relevant time period, he was able to lift twenty to twenty-five pounds, he could sit and for thirty to forty-five minutes, and walk one to two miles with breaks. (TR. 26, 92). The ALJ noted that the plaintiff has no upper extremity limitations. Substantial evidence supports the ALJ's RFC determination.

***B. Whether the ALJ erred by failing to obtain the opinion of a medical expert regarding the plaintiff's disability onset date.***

The plaintiff next argues that the ALJ erred by not eliciting testimony from a medical expert regarding his disability onset date. (Doc. 7 at 10).

Social Security Ruling, ("SSR"), 83-20 sets forth the policy, and describes the relevant evidence to be considered, when establishing the onset date of disability. SSR 83-20 defines the onset date of disability as "the first day an individual is disabled as defined in the Act and the regulations." SSR 83-20. When determining the onset date of disability, the ALJ should consider: (1) the claimant's allegations; (2) the claimant's work history; and (3) the medical and other evidence. SSR 83-20. Further, SSR 83-20 provides, in part:

> In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available. When the medical or work evidence is not consistent with the allegation, additional development may be needed to reconcile the discrepancy. However, the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record.

SSR 83-20.

When "the medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the administrative law judge to call upon the services of a medical advisor." *Newell v. Commissioner of SSA*, 347 F.3d 541, 549 (3d Cir. 2003) (citing *DeLorme v. Sullivan*, 924 F.2d 841, 848 (9th Cir. 1991)). Here, the ALJ did not elicit testimony from a medical expert regarding the plaintiff's disability onset date. The defendant states that the ALJ did not elicit testimony from a medical expert because there was no finding of disability. (Doc. 8 at 12). Further, the defendant states that there was sufficient medical evidence in the record for

11

the ALJ to make his determination. (Doc. 8 at 12).

In *Walton v. Halter*, 243 F.3d 703, 709 (3d Cir. 2001), the Third Circuit stated that the ALJ must elicit the opinion of a medical expert where the alleged impairment was a slowly progressive one, the alleged onset date was far in the past, and adequate medical records for the most relevant period were not available. In *Walton*, the claimant alleged a slowly progressive psychiatric impairment that began more than thirty years before his claim and the treating psychiatrist had destroyed the claimant's medical records. *Walton*, 243 F.3d at 708-10. Thus, the court in *Walton* required the testimony of a medical expert regarding the claimant's disability onset date. *Id.*

However, in the present matter, the plaintiff's medical records for the relevant time period are available and are adequate to determine the alleged disability onset date. On his DIB application, the plaintiff reported that his onset date was September 15, 1997. (TR. 57-58). In her decision, the ALJ noted that the alleged onset date is September 15, 1997. (TR. 17). Further, the plaintiff's alleged onset date was six years prior to filing of his DIB claim. The evidence of record was adequate to establish the plaintiff's alleged disability onset date. Thus, the ALJ did not err by not eliciting testimony from a medical expert.

### C. Whether the ALJ erred in the evaluation of the plaintiff's testimony.

The plaintiff's last argument is that the ALJ erred by failing to properly evaluate his testimony. (Doc. 7 at 11-15).

With respect to subjective complaints, the regulations require objective clinical signs and laboratory findings which demonstrate the existence of a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. *See* 20 C.F.R. §§ 404.1529(b), 416.929(b).

If the medical evidence establishes the existence of a medically determinable impairment that could reasonably be expected to produce the symptoms alleged, the regulations then require the ALJ to evaluate their intensity and persistence and their effect on the claimant's capacity to work in light of the entire record. *See* 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3). The Third Circuit has indicated that "[t]his obviously requires the administrative law judge to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999). Where the ALJ's credibility findings are supported by substantial evidence, those findings will not be disturbed on appeal. *See Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983).

In addition, a claimant's report of daily activities is a factor to be considered in evaluating the credibility of his/her subjective complaints of pain. *See* 20 C.F.R. §§ 404.1529(c)(3)(I), 416.929(c)(3)(I); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

Here, the ALJ considered and evaluated the plaintiff's subjective complaints pursuant to 20 C.F.R. § 404.1529 and Social Security Rulings 96-4p and 96-7p. (TR. 18-22). The ALJ found that the plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but not to the intensity, persistence and limiting effects as alleged by the plaintiff. (TR. 22). The ALJ found that the plaintiff's description of his symptoms are not entirely credible and not supported by the medical evidence of record. (TR. 22). Although the plaintiff alleges chronic low back pain and the objective data supports the existence of abnormalities, the clinical findings, treatment history and activities of daily living do not support the plaintiff's complaints of debilitating pain. (TR. 22).

As noted above, the plaintiff testified regarding his activities during the relevant time period. The plaintiff testified that, although limited, he is capable

of performing certain daily activities, which is inconsistent with the definition of total disability pursuant to the Act. The plaintiff testified that he cared for his own personal needs, he occasionally cooked and did minimal household chores. (TR. 479). He reported hobbies of fishing, hunting, hiking, walking, crafts, drinking alcohol and reading. (TR. 479-80).

On his November 2003 disability questionnaire, the plaintiff indicated that his daughter depended on him for care and he watched her five days a week from 6:00 a.m. to 1:00 p.m. (TR. 90). The plaintiff reported that he was able to take care of his own personal needs, with rest, he could drive for short periods of time, he occasionally raked the garden, he was able to cook slowly, and he could occasionally vacuum, clean and do laundry. (TR. 90-92). The plaintiff stated that he required breaks when cooking or cleaning due to his pain. (TR. 91). The plaintiff reported that he could grocery shop, with rest, and load and unload the bags from the car. (TR. 91).

The plaintiff also reported that he required rest while walking or standing. (TR. 92). He stated that he could walk twenty steps (ten times a day), walk one mile, sit thirty to forty-five minutes and lift twenty to twenty-five pounds. (TR. 92). Pain caused the plaintiff to rest while performing these activities. (TR. 92).

The plaintiff reported that he had constant pain in his back, legs and feet and his pain was worse in the morning and night. (TR. 93-94). His pain caused difficulty sleeping, thinking and concentrating. (TR. 94-95). He took pain medication, which made his pain more tolerable though it did not completely relieve the pain. (TR. 95). Side effects of the medication included irritability and drowsiness. (TR. 95).

The ALJ summarized the plaintiff's activities of daily living, noting that he was socially and physically active, he drove, swam, walked, went bike riding, he was able to care for his own personal needs and he performed

household chores. (TR. 22). The ALJ also noted that the plaintiff required no assistive devices for ambulation, he received adequate pain relief from medications and he required no surgery. (TR. 22).

The ALJ stated that the objective evidence of record reflects that radiological studies from September 1997 through December 2001, were initially normal and later revealed degenerative lumbar disc disease without spinal canal or foraminal stenosis. (TR. 18, 244). X-rays of the lumbar and thoracic spines in October 1994 were normal. (TR. 324-25). A CT scan in December 1994 revealed a central disc bulge at L4-5 with minimal osteoarthritic changes. (TR. 322). A September 2002 MRI revealed degenerative disc disease at L3-4, L4-5 and L5-S1, diffuse posterior disc bulging with a focal right protrusion at L4-5, mild disc bulging at L5-S1 and L2-4, and no evidence of spinal canal or foraminal stenosis. (TR. 136).

Thus, while the record reflects that the plaintiff suffers from limitations as a result of his impairments, there is substantial evidence in the record to support the ALJ's finding that the plaintiff's subjective complaints were not entirely credible to the extent that they were not totally disabling as defined in the Act.

## VI. RECOMMENDATION.

Based on the foregoing, it is recommended that the plaintiff's appeal be **DENIED**.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Dated: June 4, 2008**
O:\shared\REPORTS\2007 Reports\07-0613.01.hhs.wpd

15